# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

December 16, 2013

Arjun K. Murahari, Esq.
Mignini, Raab and Demuth LLP
429 S. Main Street
Bel Air, MD 21014

Frederick A. Raab, Esq.
Mignini and Raab LLP
606 Baltimore Avenue, Suite 100
Towson, MD 21211

Stacey Irene Cole, Esq.
Special Assistant United States Attorney
Social Security Administration
Altmeyer Building
6401 Security Boulevard, Room 617
Baltimore, MD 21235

> Re: Michelle Yuvette Harris v. Carolyn W. Colvin,
> Commissioner, Social Security,
> Case No. SKG-12-3584

Dear Counsel,

Plaintiff, Michelle Harris, by her attorneys, Arjun K. Murahari and Frederick A. Raab, filed this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II

of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 405(g) and 42 U.S.C. § 1383b(a). This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 5; ECF No. 7; ECF No. 8).

Currently pending before the Court are cross motions for summary judgment. (ECF No. 15; ECF No. 17). No hearing is necessary. Local Rule 105.6. For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 5, 2009 (R. 154-167) alleging a period of disability beginning June 20, 2006 due to uterine fibroid tumors. (R. 188). Plaintiff's applications were denied initially on May 8, 2009 (R. 81) and on reconsideration on January 11, 2010. (R. 89; R. 91). The plaintiff had an administrative hearing on November 19, 2010. (R. 35-76). The ALJ issued a decision on February 9, 2011, finding that plaintiff was not disabled. (R. 15-34). The Appeals Council denied plaintiff's request for review on October 24, 2012. (R. 1-5). The ALJ's opinion is therefore the final decision of the agency. Plaintiff filed this action seeking

review of that final decision pursuant to 42 U.S.C. § 405 (g) on

December 6, 2012.  (ECF No. 1).

## II.  FACTUAL BACKGROUND

The Court has reviewed the Commissioner's Statement of

Facts and, finding that it accurately represents the record,

hereby adopts it.  (ECF No. 17-1).

## III. ALJ'S FINDINGS

In evaluating plaintiff's claim for disability insurance

benefits, the ALJ was required to consider all of the evidence

in the record and to follow the sequential five-step evaluation

process for determining disability, set forth in 20 C.F.R §

416.920(a).[1]  If the agency can make a disability determination

at any point in the sequential analysis, it does not review the

claim further. 20 C.F.R. § 1520(a).  After proceeding through

all five steps, the ALJ in this case concluded that plaintiff

was not disabled as defined by the Act.

The first step requires plaintiff to prove that she is not

engaged in "substantial gainful activity."[2]  20 C.F.R. §

---

[1] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or has lasted
or can be expected to last for a continuous period of not less than 12
months."  42 U.S.C. § 416(i)(1)(A) (2004).
[2] Substantial gainful activity is defined as "work activity that is both
substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial
if it involves doing significant physical or mental activities and even if it
is part-time or if plaintiff is doing less, being paid less, or has fewer
responsibilities than when he worked before.  20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household

416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in substantial gainful activity, plaintiff will not be considered disabled.  Id.  The ALJ in the present case found that plaintiff did not engage in substantial gainful activity since the alleged onset date of her period of disability, June 20, 2006.  (R. 20).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that through the date last insured, plaintiff had the following severe impairments: morbid obesity, status post broken right ankle, and depression.  (R. 20).

At step three, the ALJ considers whether plaintiff's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ found that plaintiff did not have an impairment that meets or medically equals one of the listed impairments.  (R. 21).

tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

Before an ALJ advances to the fourth step, she must assess plaintiff's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(a)(4)(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1520(a)(2).

In determining a plaintiff's RFC, ALJs must evaluate the plaintiff's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.152. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p,

1996 SSR LEXIS 4.  To assess credibility, the ALJ should

consider factors such as the claimant's daily activities,

treatments she has received for her symptoms, medications, and

any other factors contributing to functional limitations. Id.

Here, the ALJ found that plaintiff had the residual

functional capacity to perform sedentary work as defined in 20

CFR 404.1567(a) and 416.967(a), restricted to sitting for six

hours in an eight hour workday and standing or walking for two

hours in an eight hour workday.  (R. 24).  The ALJ found that

plaintiff is limited to work with only occasional balancing,

stooping, kneeling, crouching, crawling, or stair/ramp climbing

requirements; plaintiff may never climb ladders, ropes, or

scaffolds; and plaintiff is to avoid concentrated exposure to

temperature extremes, hazards, and pulmonary irritants.  (Id.).

The ALJ also noted that plaintiff ambulates with a cane.  (Id.).

At the fourth step, the ALJ must consider whether plaintiff

retains the RFC necessary to perform past relevant work.  20

C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ noted that

past work as a fast food worker would exceed plaintiff's current

residual functional capacity.  (R. 28).  Therefore, plaintiff

was unable to perform any of her past relevant work.  (Id.).

Where, as here, plaintiff is unable to resume her past

relevant work, the ALJ must proceed to the fifth and final step.

This step requires consideration of whether, in light of

vocational factors such as age, education, work experience, and RFC, plaintiff is capable of other work in the national economy. See 20 C.F.R. §§ 404.1520(f), 416.920(f). At this step, the burden of proof shifts to the agency to establish that plaintiff retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both plaintiff's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Here the ALJ found that plaintiff was capable of making a successful adjustment to work currently existing in the national economy. (R. 29). Specifically, the ALJ found that plaintiff could successfully work as an unskilled order clerk and security monitor. (Id.).

The ALJ therefore found that the plaintiff was not under a disability at any time from June 20, 2006 through February 9, 2001, the date of the decision. (R. 30).

### IV.  STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence—not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must

uphold the Commissioner's decision if it is supported by
substantial evidence and if the ALJ employed the proper legal
standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v.
Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829
F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists
of more than a scintilla of evidence but may be somewhat less
than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642
(4th Cir. 1966).  It is "such relevant evidence as a reasonable
mind might accept to support a conclusion." Richardson v.
Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

     In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner. Craig, 76
F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence. Snyder v. Ribicoff, 307
F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings
are supported by substantial evidence, this Court is bound to
accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.
1962).

     Despite deference to the Commissioner's findings of fact,
"a factual finding by the ALJ is not binding if it was reached
by means of an improper standard or misapplication of the law."
Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The Court has

authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing."  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

## V.   DISCUSSION

Plaintiff makes two primary arguments on appeal.  The Court shall address them in turn.

### A. Determination of the severity of impairments

Plaintiff argues that substantial evidence did not support the ALJ's finding that plaintiff's uterine fibroids, anemia, and sleep apnea were non-severe impairments.  Plaintiff contends instead that the medical and non-medical evidence of record demonstrates that the aforementioned conditions, individually and in combination with the plaintiff's obesity, did cause more than a minimal effect on her ability to perform basic work activities.  (ECF No. 15-2, 14-20).

Defendant responds first that the ALJ did not err because while plaintiff was diagnosed with fibroid tumors and associated anemia, there was no indication that it was severe, and "the record does not support a conclusion that [the condition] caused significant vocationally relevant limitations." (ECF No. 17-1, 16).  Similarly, defendant contends that the ALJ did not err in determining that plaintiff's sleep apnea, even when considered in combination with plaintiff's obesity, "is mild and does not

9

impose 'significant vocationally relevant limitations'",
therefore rendering it non-severe.  (Id. at 18).

The severity evaluation is a de minimis "threshold
screening standard to eliminate frivolous claims at an early
stage in the process."  Bowen v. Yuckert, 482 U.S. 137, 180
(U.S. 1987); see also Felton-Miller v. Astrue, 459 Fed. Appx.
226, 230 (4th Cir. 2011).  20 CFR 404.1521 defines a non-severe
impairment as one that "does not significantly limit . . .
physical or mental ability to do basic work activities."  SSR
85-28, written "[t]o clarify the policy for determining when a
person's impairments may be found 'not severe'," states that an
impairment is not severe "when medical evidence establishes only
a slight abnormality or a combination of slight abnormalities
which would have no more than a minimal effect on an
individual's ability to work."  SSR 85-28.  Severe impairments
must have lasted or must be expected to last twelve months.  20
C.F.R. §§ 404.1509, 1520(a)(ii).  Furthermore, if an ailment is
controlled by medication or treatment such that it does not
cause work-related limitations, the ailment is not to be
considered severe.  See Gross v. Heckler, 785 F.2d 1163, 1166
(4th Cir. 1986).

A determination that impairment is not severe requires "a
careful evaluation of the medical findings that describe the
impairment" and "an informed judgment about the limitations and

restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities."  SSR No. 96-3p.

### 1. The ALJ did not err in determining that plaintiff's uterine fibroids are a non-severe impairment.

In determining that plaintiff's uterine fibroid condition and associated anemia are non-severe impairments, the ALJ cited to the uterine artery embolization procedure that the plaintiff underwent in November 2009, resulting in the improvement of plaintiff's condition.  (R. 21).  The ALJ found that there was "virtually nothing in the record now to indicate that [plaintiff's uterine fibroid condition] is a severe impairment" following the artery embolization.  (Id.).  The Court finds that this conclusion is substantially supported by the record.

Plaintiff claims that the RFC assessments performed by the two state agency physicians, Drs. Moore and Hakkarinen, establish that plaintiff's uterine fibroids had more than a minimal effect on her ability to perform basic work activities. (ECF No. 15-2, 14-15).  Plaintiff also claims that her uterine fibroid condition continued to cause more than a minimal limitation on her ability to perform basic work activities following artery embolization surgery.  (Id. at 16-17).  Neither of plaintiff's claims is supported by the record.

In his May, 2009 assessment, Dr. Moore did note that the plaintiff's primary diagnosis was fibroid tumors, and that her symptoms included a need to use the bathroom frequently due to bleeding. While claimant's reference to need to use the bathroom suggests that the bleeding could not be managed with pads, etc., it is not clear.  His assessment also referenced a February 9, 2009 patient complaint of "heavy bleeding." (R. 312)  However, his notes do not indicate a  limitation on plaintiff's ability to perform basic work activities, even prior to plaintiff's embolization surgery.  (R. 305-312).  Dr. Moore's assessment found some exertional limitations (consistent with sedentary work) with some postural limitations, but the reason cited for these limitations was the plaintiff's obesity, not her fibroid tumors.  (Id. at 307).  Dr. Hakkarinen's assessment in 2010 following the embolization procedure suggested the same limitations, and also noted that "she uses bathroom frequently due to bleeding."  (R. 340, 343).  At the hearing, plaintiff stated the surgical procedure resolved the problem "[a]t first. . . pretty good but now. . . [she is] starting to have some spotting or bleeding."  (R. 51).

The ALJ considered the objective medical evidence and plaintiff's own statement to her doctor that she was "doing much better, with far less bleeding" following the embolization procedure in support of the conclusion that the procedure was

successful in alleviating the symptoms of plaintiff's fibroids. (R. 326). It is not clear from the record whether the complaints of bleeding are throughout the month, or associated her condition with her menstrual cycle, so confined to a few days. (Cf. R. 188 to R. 202). As noted, the record does not strongly support a finding that plaintiff's uterine fibroid condition was severe prior to her embolization surgery; following the embolization surgery, the record supports a finding that the uterine fibroid condition is non-severe. Thus, the ALJ's determination that the fibroid condition is non-severe is supported by substantial evidence as to the period post-surgery. As to pre-surgery, the record is unclear both as to whether she had the condition for the requisite duration and whether her condition met the severity's definition pre-surgery. In any event, if the ALJ erred in finding her uterine fibroids pre-surgery "non-severe" it is harmless error within the context of all the evidence.

**2. The ALJ did not err in determining that plaintiff's sleep apnea was a non-severe impairment.**

The ALJ found that the plaintiff's mild sleep apnea was a non-severe impairment under 20 C.F.R. § 416.909 because it did not meet the twelve-month durational requirement and because it did not impose significant vocationally relevant limitations. (R. 21). The Court finds that the ALJ erred in interpretation

of the durational requirement of 20 C.F.R. § 416.909, but that substantial evidence still supports the conclusion that plaintiff's sleep apnea – if indeed she even has it - is non-severe.

Plaintiff argues correctly that her sleep apnea condition actually meets the durational requirement, which states that an impairment, in order to be considered severe, "must have lasted or must be expected to last for a continuous period of at least 12 months." (ECF No. 15-2, 17)(emphasis added). It follows that an impairment is not precluded from a finding of severity if it has not yet persisted for twelve months, but is expected to persist into the foreseeable future. Plaintiff contends that, in light of this interpretive error on part of the ALJ, plaintiff's sleep apnea should be considered a severe impairment, particularly when considered in combination with her morbid obesity. (Id. at 17-19). However, this claim is contradicted by the record.

This Court finds that the ALJ was not required to engage in a severity determination of plaintiff's sleep apnea, as the objective medical record does not support a finding that plaintiff suffered from sleep apnea as a medically determinable impairment. Plaintiff relies on consultation notes, finding that the "patient has multiple signs and symptoms which are suggestive of possible obstructive sleep apnea." (R. 366).

However, the physician who conducted the subsequent March 28, 2010 sleep study found that plaintiff experienced zero apnea events and zero hypopnea events, stating in conclusion that plaintiff's diagnosis was "primary snoring (786.00) without significant sleep apnea; no significant abnormalities." (R. 362)(emphasis added). In absence of a medically determinable impairment, an assessment of severity is unnecessary. Whether "sleep apnea" or "primary snoring," the record does not demonstrate that the condition is severe.

## B. Residual Functional Capacity Determination

Plaintiff alleges generally that the ALJ's RFC determination was not supported by substantial evidence, and that the ALJ's conclusory statements contained in the RFC lack explanation. (ECF No. 15-2, 21,30). Specifically, plaintiff alleges that the ALJ erred in affording "no medical opinion in the record any weight," and that the decision to afford no weight to Dr. Hsu's opinion was influenced by inappropriate speculation and not supported with substantial evidence. (Id. at 22, 28).

Defendant responds correctly that the plaintiff misstates the ALJ's treatment of the medical opinions on record, which was in accordance with the prescribed administrative procedure and supported by substantial evidence. Defendant also contends that the decision to afford Dr. Hsu's medical opinion no weight was

supported by the objective medical documents on record, and that any speculation on part of the ALJ did not materially affect the RFC determination.  (ECF No. 17-1, 24).

### 1. ALJ's Treatment of Medical Opinions

#### a. The ALJ did not err in affording no weight to the medical opinion of treating physician Dr. Hsu

In her analysis, the ALJ noted that Dr. Hsu found that plaintiff could sit, stand, or walk for only one hour in an eight hour workday.  (R. 27).  Dr. Hsu also found that claimant could never climb, bend, squat, reach, or crawl, and could not push or perform fine manipulation.  (Id.).  In addition, Dr. Hsu opined that plaintiff's medical condition prevents her from working in any employment.  (Id.).

The ALJ found that Dr. Hsu's opinion deviated substantially from the rest of the evidence of record and that the specific objective findings needed to support the level of restriction noted in Dr. Hsu's evaluation were not documented.  (R. 28).  The ALJ also noted that that Dr. Hsu failed to point to any objective medical testing in the welfare application form she completed, and seemed to rely heavily on the plaintiff's subjective report of symptoms and limitations.  (Id.).  In regard to Dr. Hsu's opinion that plaintiff's medical condition prevents her from working in any environment, the ALJ stated

that the issue of disability is reserved for determination by
the commissioner and that Dr. Hsu's opinion on the matter can
therefore "[not] be entitled to controlling weight, but must be
carefully considered to determine the extent to which [it is]
supported by the record as a whole or contradicted by persuasive
evidence." (Id.) (citing 20 CFR 404.1527(d)(2) and Social
Security Ruling 96-5p).

Plaintiff avers generally that the ALJ failed to support
the aforementioned findings with substantial evidence.
Plaintiff asserts that Dr. Hsu's prior treatment records for
plaintiff do in fact support the findings in Dr. Hsu's RFC
assessment. (ECF No. 15-2, 23). Specifically, plaintiff refers
to treatment records noting plaintiff's dizziness and unsteady
walking, an abnormal MRI of the brain taken on April 6, 2010 at
the behest of Dr. Hsu, and treatment notes in Dr. Hsu's records
describing plaintiff's "grossly obese body habitus" and edema of
her legs. (Id. at 23-24). Plaintiff also contends that the ALJ
engaged in inappropriate speculation regarding the possibility
that Dr. Hsu may have provided a note in support of plaintiff's
professed disability in order to avoid doctor/patient tension
with the plaintiff, and that this speculation is an
inappropriate basis for the ALJ's determination that Dr. Hsu
relied heavily on plaintiff's subjective report of symptoms and
limitations. (Id. at 29).

The defendant argues that "Dr. Hsu's opinion was inconsistent with the rest of the record evidence, including her own treatment notes." (ECF No. 17-1, 21). Specifically, the defendant refers to Dr. Hsu's report's inconsistency with the reports of the two state agency doctors, both of which indicate that the plaintiff is capable of sitting for about six hours in an eight-hour workday. (Id. at 22). Defendant notes also that Dr. Hsu's records generally do not indicate the decreased capacity reflected in the RFC, which deviates significantly from the cumulative longitudinal record of the plaintiff's condition. (Id. at 21-23). Instead, Dr. Hsu's examination notes, apart from "notations that Ms. Harris was ambulating slowly with a cane while recovering from her ankle surgery from January through April 2010 . . . mainly reflect a normal gait." (Id. at 21)(citing R. 271, 283, 483, 486, 489, 492, 495, 498, 505, 508, 511). Defendant notes that, regardless of any speculation on part of the ALJ, the objective medical files on record largely support the finding that Dr. Hsu relied heavily on plaintiff's subjective reports in completing the RFC. (Id. at 24).

The opinions of treating physicians are generally given a measure of deference by courts due to their "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 CFR 404.1527(a)(2). If a treating source is "well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight. Id. However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

If a treating source opinion does not merit "controlling weight," it should be weighed according to the factors promulgated by the Commissioner in the regulations. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (Jul. 2, 1996). The factors are:

(1)  The length of the treatment relationship and the frequency of examination;
(2)  The nature and extent of the treatment relationship;
(3)  The extent to which the opinion is supported by medical evidence of record;
(4)  The consistency of the opinion with the record as a whole;
(5)  The specialization of the treating physician; and
(6)  Any factors which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

While a non-controlling treating source opinion is entitled to deference, an ALJ may still find, after an analysis of the above factors, that the opinion is only entitled to slight weight. See, e.g., Thompson v. Astrue, 442 Fed. Appx. 804, 808

(4th Cir. 2011)(affirming decision to afford less weight to a treating physician).  If, for example, a treating physician's final opinion "was not supported by treatment notes or by other information on file," an ALJ may discount the opinion.  Russell v. Comm'r of Soc. Sec., 440 Fed. Appx. 163, 164 (4th Cir. 2011); see also Anderson v. Comm'r, 127 Fed. Appx. 96, 97 (4th Cir. 2005).

The Court recognizes that the ALJ engaged in some speculation regarding the possibility of an ulterior motive behind the submission of Dr. Hsu's medical opinion.  As plaintiff points out, such speculation is improper and may warrant remand if it forms the sole basis for one or more of the ALJ's conclusions.  (ECF No. 15-2, 28-29)(citing Haines v. Astrue, No. SAG-10-cv-822, 2012 U.S. Dist. LEXIS 3235 (D. Md. 2012)).  Indeed, "it cannot be said that the final decision of the Secretary is supported by 'substantial evidence' when that decision is based, in essence, on nothing more than speculation by the administrative law judge."  SSR 82-34.  However, the speculation that warranted remand in Haines differs substantially from that committed by the ALJ in this case.

While the speculation in Haines formed the basis of that ALJ's definitive conclusions, in the case at hand the ALJ presents the speculative statement only as an illustrative hypothesis.  The ALJ does not affirmatively state that the

plaintiff ever pressured or attempted to pressure Dr. Hsu, nor does the ALJ draw any conclusions based on an assumption that Dr. Hsu was pressured by the plaintiff. The ALJ only draws the correlation that such doctor/patient dynamics are more prevalent in cases where a medical opinion "departs substantially from the rest of the evidence of record, as in the current case." (R. 28).

It could possibly be argued that the ALJ's hypothesis contains a thinly veiled insinuation that there was in fact an ulterior motive behind the presentation of Dr. Hsu's medical opinion. Notwithstanding, the analysis performed by the ALJ is otherwise satisfactory, and the reasoning behind it is clear. Specifically, the ALJ makes it clear that the RFC determination submitted by Dr. Hsu is in conflict with the totality of the other evidence on record, which includes the less restrictive RFC determinations of the state agency doctors (R. 305-312,338-345), Dr. Hsu's own treatment notes do not contain the physical findings, test results, etc., supportive of plaintiff's alleged disability (R. 271, 283, 483, 486, 489, 492, 495, 498, 505, 508, 511). However, they do contain plaintiff's testimony that her medical conditions had improved with treatment and that she was experiencing minimal pain (R. 49, 51, 59, 351), and a handful of generally positive prognoses by other medical personnel of record. (R. 326, 352, 362, 369, 382, 427, 442, 450). The ALJ

thoroughly discussed and developed all of the aforementioned
evidence chronicling the development of plaintiff's medical
conditions.  Any speculation on part of the ALJ regarding the
doctor/patient pressures was immaterial to the weighing of Dr.
Hsu's medical opinion, which the ALJ properly supported with
substantial evidence.

### b. The ALJ did not err in the consideration of the medical opinions of the state agency doctors; Drs. Moore and Hakkarinen

Plaintiff contends that the ALJ assigned no weight to the
opinions of Drs. Moore and Hakkarinen, and in doing so
inappropriately discounted all of the available medical opinions
on record.  (ECF No. 15-2, 22).  Thus, plaintiff avers that the
ALJ failed to support the final RFC assessment with substantial
evidence.  (Id.).

This claim ignores the ALJ's express assignment of "partial
weight" to the opinions of Drs. Moore and Hakkarinen regarding
plaintiff's physical limitations.  (R. 27).  The ALJ assigned no
weight only to the doctors' particular finding that plaintiff
could perform light work, suggesting instead a more restrictive
limitation on the plaintiff's capacity for work.  (Id.).

In contrast to the opinions of treating physicians, non-
treating source opinions are not entitled to any particular
deference, but may still be given substantial weight.  An ALJ is
obligated to discuss and weigh each medical source opinion

according to the same six factors used to weigh the opinion of a treating physician. 20 C.F.R. § 404.1527(d)(2); see also Chapman v. Comm'r, No. SAG-11-274, 2012 U.S. Dist. LEXIS 180801, 5-6 (D. Md. 2012); Phillips v. Astrue, No. PWG-10-1475, 2012 U.S. Dist. LEXIS 74629 (D. Md. 2012).

This Court finds that plaintiff's argument is based on a misreading of the ALJ's consideration of the state agency doctors' opinions and is therefore without merit. The ALJ did in fact consider the opinions of the state agency doctors. Specifically, the ALJ stated that the state agency doctors' opinions are "internally consistent and consistent with the evidence as a whole." Furthermore, the ALJ ultimately based her final RFC analysis largely on that of the state agency doctors. (R. 28). In assigning no weight to the "light work" aspect of the doctors' opinions, the ALJ correctly considered the extent to which the opinions are supported by medical evidence of record, the consistency of the opinions with the record as a whole, and any factors which tend to support or contradict the opinions. Thus, this Court finds that the ALJ committed no error in her consideration of the medical opinions of the two state agency doctors.

## 2. The ALJ's RFC Determination was Supported by Substantial Evidence.

Plaintiff contends that the ALJ failed to support her RFC determination with substantial evidence, and that the evidence of record supports a more restrictive RFC determination. (ECF No. 15-2, 24-26). Plaintiff avers specifically that the ALJ failed to consider plaintiff's status post- broken right ankle (Id. at 24), plaintiff's use of a cane (Id.), and plaintiff's obesity (Id. at 25-26) when determining that the plaintiff was capable of performing sedentary work.

Defendant responds that the ALJ considered the aforementioned conditions of the plaintiff in making the RFC determination, and that the RFC determination was supported by the medical treatment notes on record, the opinions of Drs. Moore and Hakkarinen, by plaintiff's activities of daily living, and by plaintiff's own statements. This Court agrees with the assertions of the defendant, and finds that the ALJ did not err in the formation of the RFC determination, and that the RFC determination was properly supported with substantial evidence.

It should be restated that the ALJ found that plaintiff's status post- broken right ankle and plaintiff's obesity "severe," thus warranting further inquiry into the disability status of the plaintiff. (R. 21). Furthermore, the ALJ discussed both of these conditions when determining whether the plaintiff met one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 22). Specifically, after

determining that the plaintiff's status post- broken right ankle did not meet the definition of "major dysfunction of a joint", the ALJ went on to discuss the adverse impact that obesity can have upon the co-existing impairment of a weight-bearing joint (such as an ankle), or upon an individual's general ability to "sustain activity on a regular and continuing basis during an eight-hour day, five-day week, or equivalent schedule."  (Id.). The ALJ's discussion of these conditions in these earlier stages of the sequential disability analysis does not preclude a finding that the ALJ failed to properly consider these same conditions in making her RFC determination.  However, it is at least suggestive that the ALJ was aware of the conditions, acknowledged their severity, and thus considered their effect on the plaintiff's residual capacity.

In making the RFC determination, the ALJ discussed the medical record of the fracturing and recovery process of plaintiff's right ankle, including the open reduction and internal fixation procedure, casting, and hardware removal procedures the plaintiff underwent, between October of 2009 and March of 2010.  (R. 26)(citing R. 319-325,  346-361).  The ALJ notes that the medical reports following the plaintiff's recovery state that "range of motion [of the ankle] was only mildly limited, and motors and sensation were intact", that "the ankle felt 85 per cent better since the surgery", and that

"[plaintiff] wears a boot for most walking activity and a cane for all walking activity, and that her pain reaches only a two out of ten intermittently." (R. 26).

The ALJ goes on to discuss the plaintiff's obesity, noting explicitly that Social Security Ruling 02-1p instructs adjudicators to consider obesity in tandem with limitations resulting from any other physical or mental impairment when making an RFC determination. (R. 26-27). The ALJ noted specifically that the plaintiff's Body Mass Index indicates "extreme obesity." (R. 27).

The ALJ makes note of the plaintiff's own testimony asserting that the ankle condition had improved with treatment, but had resulted in tightness and stiffness as well as "pain several times per week and some swelling for which [the plaintiff] takes Lasix and wears compression stockings." (R. 25). Furthermore, the ALJ notes that the plaintiff testified that that she takes care of "all of her own personal care needs, cooks simple meals, performs light cleaning, rides in a car, shops, pays bills, counts change, handles a savings account, uses a checkbook, reads, watches television, and socializes." (Id.). Finally, the ALJ mentions that plaintiff "appeared at the hearing with a cane." (Id.).

This Court finds that the ALJ properly conducted the RFC determination, and supported the determination with substantial

evidence.  The ALJ incorporated the medical opinions of Drs. Moore and Hakkarinen into the RFC determination as noted earlier in this opinion.  In addition, to further inform the RFC determination, the ALJ asked the VE what impact the plaintiff's use of a cane would have on suitable work positions.  The VE stated that "the sedentary positions would not be affected by having a cane [and] the light positions would be eliminated." (R. 70).  The ALJ ultimately decided that the plaintiff was only capable of sedentary work, whereas the doctors suggested the plaintiff was capable of "light" work.  (R. 27).  Accordingly, the use of the cane would not affect plaintiff's ability to do sedentary work, identified by the VE.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that the ALJ committed no material errors in her opinion.  Accordingly, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

_____/s/_____
Susan K. Gauvey
United States Magistrate Judge